UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**
**JUL 24 2008**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR 07-40083 |
| Plaintiff, | \* | |
| vs. | \* | ORDER |
| ESTEBAN RUIZ-CHAVEZ; | \* | |
| VENANCIO CRUZ-GOMEZ, a/k/a "Juhaco," | \* | |
| URIEL VARGAS, a/k/a "Woody," and STEPHANIE MARIE BOWERS, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court are Defendant Esteban Ruiz-Chavez' Motions to Suppress, Doc. 59, 60, Defendant Venancio Cruz-Gomez' Motion to Suppress, Doc. 56, Defendant Uriel Vargas' Motion to Suppress, Doc. 66, and Defendant Stephanie Marie Bowers' Motion to Suppress, Doc. 64, and the Report and Recommendation of Magistrate Judge John E. Simko, Doc. 103.

The Court adopts the factual summary in the first eight pages of the Report and Recommendation. This Court also adopts the conclusion of the Report and Recommendation regarding the search but not the discussion section regarding the search. The Court does not adopt the Report and Recommendation regarding the statements made by Ruiz-Chavez prior to his formal arrest. Those statements will be suppressed.

To begin with, it is clear that Trooper Bader, with his drug dog "Robby," did not begin to follow the van in which Defendants were riding because of a traffic offense. Instead, after seeing a minority person driving a van with tinted windows, the Trooper followed the van for about five miles, with the Trooper having to speed to catch up to the van within two miles, as the van was traveling 74 miles per hour, just within the speed limit. The Trooper was not following the van

simply because he thought the van driver might commit a traffic offense. The video shows that the Trooper crowded the van in such a way that any driver would be nervous with a marked patrol car following in that manner. The desired result was reached. There is conflicting evidence from the Trooper as to whether or not he ever did time the gap between Defendants' vehicle and the one the Defendant overtook. The van did, however, appear in the video to be close enough to the vehicle ahead when he pulled out to pass that a traffic citation could be given.

The conversation that ensued with the driver of the van, Cruz-Gomez, was not simply what was necessary for the warning ticket the Trooper proposed to issue. Instead, the questioning was almost all drug related to see if there were either internal inconsistencies or inconsistencies that could be developed in questioning the passengers. This questioning clearly prolonged the stop. The only complication which arose with regard to the proposed warning ticket was that the driver was not listed as an additional driver on the rental contract. Esteban-Chavez was therefore spoken to concerning the rental agreement.

The Trooper also spoke to Ruiz-Chavez. Consideration of the factors indicating custody from *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146-47 (8th Cir. 2007) are as follows: the suspect was not informed that he was free to leave and that answering was voluntary; the suspect did not possess freedom of movement; the suspect did not initiate contact or voluntarily acquiesce, he only did what he was directed by a visibly armed Trooper to do; the atmosphere was police dominated; however, no strong arm tactics or strategies were employed and the suspect was placed under arrest shortly after the end of the questioning although by that time the methamphetamine had been found. On the balance, there was a "restraint on freedom of movement of the degree associated with a formal arrest." *Flores-Sandoval*, 474 F.3d at 1146. The statements of Ruiz-Chavez prior to his formal arrest are suppressed.

But what about the search that the Trooper clearly wanted to make from the time he first saw the Defendants? The tactics on the Interstate are questionable, and the inconsistencies in the Trooper's various statements are concerning, but the Trooper's intent is not relevant to fourth amendment analysis.

Intent is, however, relevant for equal protection analysis. The Defendants complain that they were not allowed the discovery necessary to present their equal protection claim. The burden on Defendants is significant. The information the Defendants requested from the State of South Dakota would not have shown whether or not the initial traffic stop was selective enforcement by South Dakota troopers in general or Trooper Bader in particular, as the citations issued do not indicate the race of the person receiving the citation. In addition, the incidence of Hispanics or other minorities traveling on South Dakota roads would have to be separately ascertained as that figure is likely different from the residence figures in South Dakota. Counsel for Defendant Bowers suggested that telephoning those cited would be a way to establish the number of Hispanics cited. Telephone numbers are not, however, recorded on the citations. Doc. 97, Ex. A. Defendants did not make an initial showing that race was the basis for the Trooper starting his following of Defendants' vehicle. The Trooper stated other factors, some of which appear to be strained. For example, if a nice shirt is suspicious, then too, isn't a grubby shirt at least equally suspicious? Is looking away from the Trooper more suspicious than looking directly at the Trooper? Two hands on the steering wheel is the method of driving taught in driver's education, but having the arms held stiffly is suspicious? What would not be suspicious? There was no luggage in sight. How could the Trooper in the median have a sight line into the van so that he could see whether or not there was any luggage?

Despite all this, the van did follow a vehicle too closely, and the traffic stop was proper. Despite the varying accounts of what next transpired, there is a nucleus of facts which supports a reasonable suspicion to prolong the traffic stop, as it was unduly prolonged from a normal traffic stop with only the complication of the driver not being named on the rental contract. Accordingly, the evidence obtained as a result of the search is not suppressed. In addition, there was reasonable basis for obtaining the identity of Uriel Vargas as one of the passengers in the vehicle.

Even though Uriel Vargas was not free to leave the scene, the Trooper was entitled under these facts to ascertain his identity and that questioning was not custodial. This Court adopts the Report and Recommendation discussion of "Identity Evidence - Vargas" at pages 14-16 of the Report and Recommendation. Accordingly,

IT IS ORDERED:

1. That the Defendants' Objections to the Magistrate Judge's Report and Recommendation are overruled except the objections of Defendant Esteban Ruiz-Chavez; that the Magistrate Judge's Report and Recommendation, Doc. 103, is ADOPTED by the Court in part and denied in part, and the Defendants' Motions to Suppress, Docs. 56, 58, 59, 64, and 66 are denied., and Defendant Esteban Ruiz-Chavez' Motion to Suppress Statements, Doc. 60, is granted

Dated this 24th day of July, 2008.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: */s/ Shelly Margulies*
DEPUTY